IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SONYA TUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-3525-CV-W-RED-SSA |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Sonya Tucker ("Plaintiff") seeks judicial review of the Commissioner's decision to grant her request for disability benefits under Title II and supplemental security income under Title XVI for a closed period of time. Plaintiff has exhausted all of her administrative remedies, and judicial review is now appropriate. After carefully reviewing the record, the Court hereby **AFFIRMS** the decision of the Administrative Law Judge (the "ALJ").[1]

## BACKGROUND

The parties present complete facts and arguments in their briefs. The ALJ's decision also sets forth comprehensive findings of fact and conclusions of law. The parties' facts and arguments and the ALJ's findings and conclusions are repeated herein only as necessary to explain the Court's decision.

## LEGAL STANDARD

The Court's review is limited to determining whether the Commissioner applied the correct

---

[1] Because the Court finds that substantial evidence supports the ALJ's decision and that the ALJ applied the correct standard of law, the Court adopts much of Defendant's brief without quotation or citation.

standard of law and whether the Commissioner's findings of fact are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support the Commissioner's conclusion. *See Warburton*, 188 F.3d at 1050. In making this determination, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See id.* The Court may not reverse the Commissioner's decision merely because substantial evidence supports a different result. *See Pierce v. Apfel*, 173 F.3d 704, 706 (8th Cir. 1999). This is true even if the Court might have weighed the evidence differently and reached a different result if a *de novo* review were applied. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

To receive disability benefits a claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) the inability results from the impairment. *See* 42 U.S.C. §§ 423 (d)(1)(A), (d)(2); *see also Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975). The Court reviews the ALJ's decision to determine whether the ALJ followed the Commissioner's implementing regulations, which set out a five-step, burden-shifting process for determining whether the claimant has a "disability" within the meaning of the Social Security Act.

The five steps are: (1) whether the claimant is currently engaging in "substantial gainful activity," (2) whether the claimant is severely impaired, (3) whether the severe impairment is, or is comparable to, a listed impairment precluding substantial gainful activity as a matter of law, (4) whether the claimant, with her current Residual Functional Capacity ("RFC") can meet the demands of her past work, and if not; (5) whether the claimant retains the capacity to perform any other work

that exists in significant numbers in the economy. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (discussing the five-step analysis). In the first four steps, the burden is on the claimant to prove that she is disabled. If the claimant is not able to perform her past work, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant can perform, although the ultimate burden of persuasion remains with the claimant. *See Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004); *see also Barnhart v. Thomas*, 540 U.S. 20, 24, 28 (2003) (noting that the existence of jobs in the national economy must be proved only at step five).

## ANALYSIS

Plaintiff alleges the ALJ committed several errors when he determined her disability ended on February 1, 2009. However, upon careful examination of the record, this Court **AFFIRMS** the decision of the ALJ.

**I.     The ALJ did not err in determining that the Plaintiff was not fully credible.**

Plaintiff argues that the ALJ erred in discounting Plaintiff's credibility. Credibility determinations are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). When analyzing a Plaintiff's subjective complaints, the ALJ considers the entire record including the medical records, third party and Plaintiff's statements, and factors such as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain or other symptoms; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When the ALJ sets forth the inconsistencies on which he relies in discrediting Plaintiff's subjective complaints, and those inconsistencies are supported by the record, the ALJ's credibility determination should be affirmed. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

When evaluating Plaintiff's credibility, the ALJ considered the inconsistencies between Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms and her self-reported daily living activities and treatment records. For example, Plaintiff is a full time college student with a 3.5 grade point average who lives independently and only needs help with yard work and heavy lifting. On January 7, 2009, Jason Glenn, P.A. described Plaintiff as "doing very well" and released her to return to school on January 8, 2009. On February 11, 2009, Plaintiff was described as "doing well postoperatively" (regarding her December 22, 2009 surgery) and had only "mild-moderate residual symptoms that radiate down the right leg with increased activity." Moreover, Dr. Scarrow noted on April 24, 2009 that physical therapy had helped Plaintiff's pain level decrease to a 2-3/10 and allowed her to have up to two pain free days. However, Plaintiff claimed that she stopped attending physical therapy on April 24, 2009 because of swelling; but, on April 14, 2009, Dr. Crow noted that Plaintiff's "hands fail[ed] to show any significant swelling" and that"[t]here [wa]s minimal swelling in the feet." The ALJ further noted the inconsistencies between Plaintiff's complaints of drowsiness, dizziness, and fatigue due to her medication and Plaintiff's grade point average and medical records, specifically her visit with Dr. Crow in April 2009, which did not contain these complaints.

Plaintiff additionally argues that the ALJ erred in determining her credibility as the ALJ failed to consider her use of TENS unit for pain relief; her work history; and the fact that two other agencies found her disabled. However, an ALJ is not required to discuss every factor set forth under *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) used to assess a claimant's credibility, and so the fact that the ALJ did not include a discussion of these facts while he was assessing her credibility is not in error. *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007). Thus, as the ALJ sets forth the inconsistencies on which he relies in discrediting Plaintiff's subjective complaints, and

those inconsistencies are supported by the record, the ALJ did not err in determining that the Plaintiff was not fully credible.

**II.     The ALJ's finding that Plaintiff's disability ended on February 1, 2009 is supported by substantial evidence on the record as a whole.**

Though the ALJ found Plaintiff disabled from April 29, 2007 to January 31, 2009, the ALJ found that medical improvement occurred as of February 1, 2009 as Plaintiff underwent surgery on December 22, 2008 and was released to return to school on January 8, 2009. For the following reasons, the ALJ's finding that Plaintiff's disability ended on February 1, 2009 is supported by substantial evidence on the record as a whole.

When determining the Plaintiff's residual functional capacity, the ALJ considered the objective medical evidence, Plaintiff's daily activities, and the weight of the medical opinion. Nonetheless, Plaintiff argues that various evidence illustrates that she was disabled after February 1, 2009. First, Plaintiff argues that her handicapped parking permit which was issued on January 7, 2009 and renewed in March supports the finding of her disability. However, the issuance of a handicapped parking permit "adds nothing to a finding of disability here because there is no evidence that the two have substantially similar requirements for finding a person to be disabled." *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Plaintiff additionally argues that her pain relief methods and subjective complaints of pain supported a finding of disability after February 1, 2009. However, as stated above, the ALJ concluded that the Plaintiff was not fully credible. Moreover, though the ALJ concluded that Plaintiff had the capacity to perform sedentary work, he set forth many restrictions in its residual functional capacity report. These restrictions included the inability to push or pull, to reach above shoulder height, to walk only 15 minutes without rest, and, moreover, that Plaintiff must be allowed to use a seat cushion and a nine-inch riser when sitting, and to stand briefly as needed. The ALJ

further noted in its residual functional capacity report that Plaintiff may be unable to concentrate in highly skilled work environments. Therefore, it is clear that the ALJ considered Plaintiff's complaints of pain while also considering her diminished credibility. Furthermore, the ALJ's residual functional capacity report is consistent with Plaintiff's clearance to return to college on January 7, 2009 ; Jason Glenn, P.A.'s statement on January 7, 2009 that Plaintiff was "doing very well" and that, though "[s]he still ha[d] some mild pain in the buttocks bilaterally, the remaining pain in the legs has resolved"; and, finally, that the only restriction Mr. Glenn imposed on Plaintiff in February 2009 was that Plaintiff was not to lift anything over 15-20 pounds.

Despite the many restrictions noted in the ALJ's residual functional capacity report, the vocational expert found that Plaintiff, after February 1, 2009, could perform a significant number of jobs in the national economy. Moreover, the vocational expert's conclusion that Plaintiff could perform jobs in significant numbers in the national economy after February 1, 2009 was proper as the hypothetical question posed to the vocational expert included the impairments and restrictions that the ALJ found credible. Therefore, the vocational expert's testimony was substantial evidence which supported the ALJ's decision. Further, for the above stated reasons, the ALJ's finding that the Plaintiff's disability ended on February 1, 2009 is supported by substantial evidence on the record as a whole.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the decision of the ALJ.

**IT IS SO ORDERED.**

DATED: December 20, 2011         /s/ Richard E. Dorr
                                 RICHARD E. DORR, JUDGE
                                 UNITED STATES DISTRICT COURT